**UNITED STATES of America,**
**Appellee,**

v.

**Garland METCALF, a/k/a J. W. Mitchell,**
**Appellant.**

**No. 11369.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1967.

Decided Jan. 2, 1968.

Joseph E. Major, Anderson, S. C. (Court-appointed counsel), for appellant.

William B. Long, Jr., Asst. U. S. Atty. (John C. Williams, U. S. Atty., and Robert O. DuPre, Asst. U. S. Atty., on the brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and WOODROW W. JONES, District Judge.

BUTZNER, Circuit Judge:

Garland Metcalf was charged in an 8-count indictment with the interstate transportation of forged or falsely made securities in violation of 18 U.S.C. § 2314.[1] Count five was nolle prossed; a jury found Metcalf guilty on the remaining counts. The material facts are not in dispute. The primary issue is whether Metcalf committed forgery. We hold that he did and affirm his conviction.

Metcalf opened a checking account on September 25, 1964, in the Bank of Travelers Rest, South Carolina, under the fictitious name of J. W. Mitchell. He drew a number of checks against this account, signing them J. W. Mitchell. In each instance Metcalf represented himself as J. W. Mitchell to the payee. Each count of the indictment involved a separate check and distinct transaction. The evidence pertaining to each count showed a similar pattern with the exception that the first check was drawn before Metcalf opened the bank account. The checks were returned unpaid because of insufficient funds.

Metcalf's principal defense is that one who opens a checking account in a fictitious name, signs the fictitious name to a check, and represents himself to the payee as the fictitious person cannot be guilty of forgery. He finds support in Smith v. State, 379 S.W.2d 326, 328 (Tex.Cr.App.1964). There the court, construing a Texas statute, held the forged instrument must purport to be the act of another. "Another," the court continued, "includes all other persons, real or fictitious, except the person engaged in the forgery." This limited definition of forgery is not in harmony with the prevailing rule in this circuit.

Courts generally agree that use of a fictitious name may constitute for-

---

1. 18 U.S.C. § 2314 provides in part:
"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securi-

ties or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited * * *" shall be punished.

gery, but they differ in applying this principle. Under what is frequently called the "broad rule," one who signs a check or other paper with a fictitious name that he represents to be his own is guilty of forgery if he acts with fraudulent intent, and if the paper has sufficient appearance of validity upon its face to enable it to be used to the prejudice of another. Under the narrow rule it must appear that the false signature is the act of someone other than the person actually making it.[2]

This court follows the broad rule of forgery. Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959). In *Cunningham* the defendant, using a fictitious name, purchased a car. He had the bill of sale made out in his fictitious name, and he signed his fictitious name to a check drawn on a nonexistent bank. In affirming the conviction, the court said:

> " * * * we do not subscribe to a rule so narrow as to exonerate from liability as a forger under § 2314 one who signs a name other than his own with fraudulent intent." [3]

■ Metcalf seeks to distinguish *Cunningham* because there the bank was non-existent. He points out that he had an account in an existing bank under the fictitious name of J. W. Mitchell and that several checks, for which he was not indicted, were paid. He urges that because he established an actual bank account upon which the checks were drawn, he could not be guilty of forgery, but only of drawing a check upon an account with insufficient funds which is not a federal offense.[4] In support of his argument he cites Melvin v. United States, 316 F.2d 647 (7th Cir. 1963), which holds that one who signs his own name upon a check drawn upon a non-existent bank is not guilty of violating § 2314. Melvin follows Greathouse v. United States, 170 F.2d 512 (4th Cir. 1948), which exonerated one who signed his own name to checks as agent of a fictitious company which had no bank account. These cases, however, are not controlling, for in each the defendant signed his own name while misrepresenting some other fact involved in the transaction.[5] Metcalf was not entitled to a judgment of acquittal as a matter of law, but nevertheless his argument does not wholly lack merit. His guilt depends upon his intent and purpose in establishing the fictitious bank account. Fraudulent intent is an essential element of forgery. See Levinson v. United States, 47 F.2d 470, 471 (6th Cir. 1931). Absent a fraudulent intent, he could not be guilty of forgery although the bank account established under a fictitious name had insufficient funds. The trial judge instructed the jury upon Metcalf's defense and carefully guarded against a verdict of guilty based only upon the fact that the bank account lacked funds to pay the checks drawn against it. He correctly charged:

> "I would instruct you that in order to find this defendant guilty on any or all of these counts of the indictment, you must find that the defendant estab-

2. The differences between the broad and narrow rules are discussed in Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959), Hall v. United States, 372 F.2d 603, 607 (8th Cir. 1967), which follows *Cunningham*, and in Annot. 49 A.L.R.2d 852 (1956). Smith v. State, 379 S.W.2d 326 (Tex.Cr.App.1964), upon which Metcalf relies, appears to apply the narrow rule.

3. Cunningham v. United States, 272 F.2d 791, 794 (4th Cir. 1959).

4. Interstate transportation of checks drawn by the maker in his own name upon an existing bank in which he has no funds does not violate 18 U.S.C. § 2314. See Hall v. United States, 372 F. 2d 603, 607, n. 8 (8th Cir. 1967) where a number of cases are cited.

5. In Cunningham v. United States, 272 F. 2d 791, 793 (4th Cir. 1959), Judge Sobeloff refuted the suggestion that Greathouse v. United States, 170 F.2d 512 (4th Cir. 1948), committed this circuit to the narrow rule of forgery. He wrote: "When we reversed Greathouse's conviction, it was because, as we viewed the facts, the defendant had merely misrepresented the extent of his authority but had not used a false name."

lished the checking account in the Travelers Rest Bank in a fictitious name, with bad purpose and with the specific intent at the time to defraud prospective payees of checks."

So there could be no mistake, the district judge emphasized the point by saying farther along in his charge:

" * * * Should you take the view that the government has failed to establish by the testimony in the case * * * that the defendant established the checking account in the Travelers Rest Bank in a fictitious name with bad purpose and specific intent at the time to defraud prospective payees then, under those circumstances, you could not find this defendant guilty * * * "

■ Metcalf's intent presented a factual issue for the jury. Only if he established the acount with a fraudulent intent could he be found guilty.[6] Conviction did not rest merely upon a finding that the bank account lacked funds to pay the checks he drew. There was evidence upon which the jury could find that the bank account was opened with fraudulent intent. Prior to the offenses for which he was indicted, Metcalf had not used the name, J. W. Mitchell, and no one by that name could be located at the address Metcalf gave the bank when he opened the J. W. Mitchell account.

■ Metcalf complains that the charge permitted the jury to consider the checks and the bank account together as a fraudulent scheme. He says the charge in effect defined fraud, and not forgery. We find no error. The judge defined the elements of forgery. He also told the jury that they should consider each count of the indictment separately and that Metcalf could be found guilty on some charges and not guilty on other charges. He cautioned the jury that Metcalf's acts on one occasion were not proof that he acted similarly on another occasion. After this explanation, the trial judge properly allowed the jury to consider all the evidence about Metcalf's activity with regard to the checks and the bank account to determine whether his intent was fraudulent. Metcalf's acts in opening the account and in passing the checks were closely related. Fraudulent intent must often be inferred from circumstantial evidence. Collateral and related conduct may be considered by the jury for this purpose. United States v. Welborn, 322 F.2d 910, 912 (4th Cir. 1963); United States v. Taylor, 305 F.2d 183, 185 (4th Cir. 1962), cert. den., 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962); Morrison v. United States, 270 F.2d 1, 4 (4th Cir. 1959), cert. den., 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 150 (1959).

■ Finally, we consider Metcalf's objection that the district judge erred when he refused to charge the jury that if Metcalf was an agent of J. W. Mitchell they should find him not guilty. No evidence was introduced to support the request for this charge. An unidentified man was with Metcalf when he passed the checks mentioned in the first three counts of the indictment. Metcalf's companion filled out the checks, but Metcalf signed them. On each occasion Metcalf identified himself to the payee as J. W. Mitchell. These facts alone do not permit an inference of implied agency between Metcalf and his unidentified companion. No other evidence of agency was proffered. The charge was properly refused. Cf. United States v. Salliey, 360 F.2d 699, 702 (4th Cir. 1966).

The judgment of the district court is Affirmed.

---

6. Metcalf passed the check mentioned in count one before he opened the account. This apparently would bring him squarely within the scope of Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959). He opened the account shortly after he passed the check, and the government does not urge on appeal that we treat count one differently from the others.